IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JESUS MANUEL GONZALEZ ) <br> ID# 1357611 ) <br> Petitioner, ) <br> vs. ) <br> ) <br> RICK THALER, Director, ) <br> Texas Department of Criminal ) <br> Justice, Correctional Institutions Division, ) <br> Respondent. ) | No. 3:10-CV-1633-M (BH) <br><br> Referred to U.S. Magistrate Judge |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to Special Order 3-251, this case has been automatically referred for findings, conclusions, and recommendation.

### I. BACKGROUND

On August 20, 2010, petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction for murder in cause F03-74252-QWT. Respondent is Rick Thaler, Director of TDCJ-CID.

#### A. Factual History

On December 16, 2003, the State indicted petitioner for the murder of Hugo Carmona on or about July 8, 2003. (Clerk's Record ("C.R").:2-3). He pleaded not guilty and was tried before a jury on October 31-November 4, 2005.

According to the testimony, Hugo Carmona (the victim) and his cousin, Javier Ochoa (Ochoa), left a dance club and were driving on a nearby service road to an expressway in Dallas, Texas, in the early morning hours of June 8, 2003. Ochoa was driving, the victim was riding in the passenger seat, and the windows were down. (R. 3:31-33, 49-50, 62). Ochoa noticed petitioner and his fraternal twin brother running towards his vehicle with their arms pointed down as they were almost at the window. (R. 3:62-65). He saw guns in their hands. Petitioner shot the victim and at

him before he was able to open his door and get out of the vehicle. He did not see petitioner's brother shoot his gun. (R. 3:67-73). Both Ochoa and the victim were shot several times; only Ochoa survived. (R. 3:71, 79-83). Ochoa testified that while he did not know their names, he knew the assailants as the "boys from Durango" with whom the victim had had problems in the past. Also, petitioner's brother, Manuel Jesus Gonzalez ("Manuel"), had approached Ochoa at the club that evening and asked about the victim. Some pushing occurred between Ochoa and Manuel, and Manuel threatened him as petitioner stood close by. Although they looked similar, he could tell the brothers apart because Manuel was shorter and thicker than petitioner. (R. 3:39-45, 76-77).

While still at the scene and before he was transported to the hospital, Ochoa told a bystander that "guys from Durango" had shot them. This same bystander testified that he saw one man firing a gun into the passenger's side of an SUV, heard eight to ten shots, saw two men running away from the SUV to two trucks parked nearby, and saw them drive away. (R. 4:203-13). At the hospital approximately eight hours later, Ochoa told a police detective that the "boys from Durango" had shot him and his cousin, and that one of the suspects was named "Chuy," a common nickname for Jesus. (R. 5:114). About thirty-six hours after the shootings, and while still in the hospital, Ochoa picked petitioner and his brother out of photo lineups and gave a written statement. Ochoa did not identify them by name, but the homicide detective testified that Ochoa pointed at the photograph of Manuel as being the shooter. (R. 5:119-24, 134). Several months later, Ochoa contacted the detective and gave a second written statement identifying petitioner as the man he saw shoot his cousin and who fired the first shot at him. (R. 5:131-33; R. 6:25). Ochoa testified that he never identified Manuel as the shooter in the line-ups, but instead identified him as the man who had threatened him earlier in the evening. (R. 3:89; R. 4:8-11, 16-17).

The State presented testimony from a firearms expert. Based on her analysis of six spent .45

2

caliber cartridge cases found at the scene and four .45 caliber bullets retrieved from the victims, she determined that all of the cases were fired from the same gun, and all of the bullets were fired from the same gun. Because she was unable to compare the bullets with the cases due to the condition of the bullets, and the weapon was never found, she could not determine whether the cases and bullets all came from the same weapon. Based on the evidence, she concluded there was either one or two guns fired at the scene, depending on whether the bullets and spent cases were all from the same gun or from two separate guns. (R. 6:71-79, 84, 87, 91).

The jury found petitioner guilty and sentenced him to ninety-nine years. (C.R.:5, 86).

**B. Procedural History**

On direct appeal, petitioner contended that he was denied effective assistance of counsel and that the trial court erred in overruling certain defense objections to evidence. Petitioner's conviction was affirmed on direct appeal in an unpublished opinion. *Gonzalez v. State*, No. 05-05-01542-CR (Tex. App.–Dallas Jan. 2, 2007, pet. ref'd). His petition for discretionary review was refused by the Texas Court of Criminal Appeals on September 16, 2009. *See* PD-1057-09. Petitioner filed a state habeas application challenging his conviction on February 10, 2010, raising the same ground for relief as in his federal petition. (State Habeas Transcript[WR-71,547-02]:2-22). On June 9, 2010, the Court of Criminal Appeals denied relief without written order on the trial court findings without a hearing. *See Ex parte Gonzalez*, WR-71,547-02 (Tex. Crim. App. June 9, 2010).

On August 20, 2010, petitioner filed his petition for federal habeas relief. On October 22, 2010, respondent filed a response and furnished the state court records. Petitioner filed a reply brief on October 27, 2010.

**C. Substantive Issue**

Petitioner's sole ground for relief is that his trial attorneys were ineffective for failing to

present ballistics testimony from a firearms expert at trial.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date, including that of petitioner. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997).

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's state writ constitutes an adjudication on the merits of the claims fairly presented to the Texas Court of Criminal Appeals.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently

4

than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court authority if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his sole ground for relief, petitioner claims that his trial counsel were ineffective because although they hired a firearms expert to examine certain ballistic evidence taken from the scene, defense counsel did not present testimony from this expert at trial. (Pet. at 6; Memorandum in Support ("Mem"):9, 12-14).

To successfully state a claim of ineffective assistance of counsel under Supreme Court prece-

5

dent, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. Petitioners must "affirmatively prove prejudice." *Id.* at 693. They cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are also insufficient to obtain habeas relief. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

**A. <u>State Habeas Court Proceedings</u>**

During the state court habeas proceedings, petitioner's trial attorneys submitted affidavits.

6

The affidavits of Kathy Lowthorp (Lowthorp) and Anna O'Day (O'Day) both state that they pursued a defense of mistaken identity at trial, arguing that petitioner's brother (who had already been convicted) was the real killer. They also considered pursuing a theory of self-defense based on petitioner's allegations about what really happened but did not because petitioner did not want to place himself at the crime scene. Based on petitioner's wishes, they argued that Ochoa was confused about who shot him and the murder victim because petitioner and his brother looked alike and had similar names, "Jesus Manuel" and "Manuel Jesus." (S.H.Tr.:105-06, 108-10).

Defense counsel hired a private investigator, a ballistics expert, and an identification expert. The identification expert testified at trial about mistaken identity. The ballistics expert examined the bullets and spent casings recovered at the crime scene and submitted a report. Defense counsel decided not to call him at trial because, like the State's expert, he could not conclusively state that the bullets and cartridges all came from the same gun since the gun was never recovered. Because he assured defense counsel that the State's expert was both ethical and extremely competent, they chose not to call the expert at trial because his testimony would have been similar to that given by the State's expert and they were mindful of costs. (S.H.Tr.:106-07, 110-11).

The expert's ballistics report states that he examined six fired cartridge cases and four fired bullets, that all fired cartridge cases were fired from the same weapon, that the four bullets were damaged, and that he could conclude that they were fired from the same weapon as the cases. It states that the bullets are consistent with having been loaded in cases similar to the ones he examined, but that "no identifiable characteristics were found to prove their mutual origin." The report also states that "[g]iven the circumstances, it is probable that the bullets and cartridge cases all originated from the same, single weapon." (S.H.Tr.:119-20).

Based on the affidavits, the report, and the record from the trial, the state habeas court found

that counsel decided not to present testimony from a ballistics expert based on their own strategy and petitioner's wishes. It also found that based on a parties theory of liability, presenting the testimony of a ballistics expert to argue use of a single gun would have not affected the outcome of the trial. Therefore, petitioner had failed to show that counsel was ineffective in this regard. (S.H.Tr.:103-04).

B. **Federal Habeas Proceedings**

Petitioner submits affidavits from the first ballistics expert and a second ballistics expert. The second expert's affidavit states his opinion that based on an examination of the evidence and relevant tests, the six cases were fired from one firearm, the four bullets were fired from one firearm, and no evidence exists to show that two firearms were used. (Pet. Ex. I). The first expert's affidavit states that he was retained by defense counsel, that he examined the ballistics evidence and preformed relevant tests, and that he concluded that there was evidence of only one gun based on the fact that the cases were fired from the same gun, the bullets were fired from the same gun, and if there were a second gun, those bullets and cartridges were not found at the scene. (Pet. Ex. J).

The report to defense counsel does not differ substantially from the testimony given by the State's ballistics expert, who was cross-examined by defense counsel. Counsel argued in closing that the State did not prove that two guns were used, and that because of the low odds of the bullets being from a different gun than the casings, the jury could assume that one gun was used. (R. 6:211-12). Petitioner has not shown that counsel's decision to cross-examine the State's witness and argue that only one gun was used instead of calling the expert permeated the trial with obvious unfairness. Ochoa testified that he only saw one gun being fired, and that petitioner was the one who fired the gun. A witness at the scene also testified that he saw one man firing a gun into the car and two men running away from the car to nearby trucks. Petitioner has not shown that additional expert

8

testimony that there was only evidence of one gun being used would have added any appreciable weight to his defense.

Petitioner has not shown either that his attorneys provided ineffective assistance of counsel or that he was prejudiced by the failure to have his ballistics expert testify at trial, and the state court's denial of relief is not an unreasonable application of the *Strickland* standard. If counsel has made an adequate investigation, an informed decision made based on trial strategy cannot be the basis for a claim of having received ineffective assistance of counsel unless the decision was so poorly chosen that it "permeates the entire trial with obvious unfairness." *United States v. Cotton*, 343 F.3d 746, 753 (5th Cir. 2003), *cert. denied*, 540 U.S. 11865 (2004), *quoting United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002). Defense counsel's affidavits explain that there was a decision made not to call the expert at trial, and petitioner has not shown that this decision permeated the trial with obvious unfairness.

Furthermore, petitioner has shown no reasonable probability that he would not have been convicted if the expert had testified at trial. Contrary to petitioner's assertion that he was tried and convicted as a principal (Mem. at 13), the jury was instructed on the Texas law of parties. They were instructed that they should find petitioner guilty of murder if they believed beyond a reasonable doubt that: 1) he intentionally or knowingly caused the murder victim's death by shooting him with a firearm; 2) he intended to cause serious bodily injury to the murder victim and shot and killed him; 3) Manuel Jesus Gonzalez intentionally or knowingly caused the murder victim's death by shooting him and petitioner, acting as a party with the intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided, or attempted to aid Manuel; or 4) Manuel Jesus Gonzalez intended to cause serious bodily injury to the murder victim and shot and killed him and petitioner, acting as a party with intent to promote or assist, solicited, encouraged, directed, aided,

9

or attempted to aid Manuel. (C.R.:72-3). The jury was also instructed on criminal responsibility for another and that mere presence alone does not make one a party to an offense. (C.R.:70). Therefore, even if the jury believed that only one gun was used at the scene, the jurors were permitted to convict petitioner if they believed that his brother was the person who shot the murder victim, but that petitioner solicited, encouraged, directed, aided, or attempted to aid his brother. The guilty verdict shows that the jury believed that petitioner was one of the men identified by Ochoa as being at the scene with a gun. Because petitioner could have been convicted as a party without actually firing a gun, there is no reasonable probability that further evidence that probably only one gun was fired at the scene would have resulted in his acquittal. Petitioner's sole ground for relief is without merit and should be denied.

## IV. EVIDENTIARY HEARING

Upon review of the filings in this case and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears unnecessary.

## V. RECOMMENDATION

The request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SIGNED on this 15th day of March, 2011.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

    A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                                                        */s/ Irma Carrillo Ramirez*
                                                 IRMA CARRILLO RAMIREZ
                                                 UNITED STATES MAGISTRATE JUDGE